UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALI SALKHI, AS AN INDIVIDUAL AND AS TRUSTEE OF THE ALI SALKHI AND FATEMEH SALKHI 1993 REVOCABLE FAMILY TRUST, AND SALKHI FAMILY HOLDINGS INC.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**PAULA DUEWEKE, JESSICA POWER, AND THE CITY OF PETALUMA,**<br><br>Defendants. | CASE NO. 20-cv-06047-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 36 |

Plaintiffs Ali Salkhi, in his individual capacity and as trustee of the Ali Salkhi and Fatemeh Salkhi 1993 Revocable Family Trust, and Salkhi Family Holdings, Inc. bring this civil rights action against defendants Paula Dueweke, Jessica Power, and the City of Petaluma. The Court previously granted in part and denied in part the defendants' motion to dismiss the complaint without prejudice to plaintiffs amending their claims. (Dkt. No. 27.) Plaintiffs filed an amended complaint, which defendants now move to dismiss.

Having carefully considered the pleadings and for the reasons set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** the motion to dismiss the amended complaint **WITH LEAVE TO AMEND**. The Court **DISMISSES** plaintiff Ali Salkhi in his individual capacity, Count 2 for equal protection in its entirety, and defendant City of Petaluma. Any remaining claims regarding the fuel line replacement, the excessive fines for false alarms, and the failure to acknowledge the change in operator are also **DISMISSED**. The motion to dismiss on the basis of qualified immunity is **DENIED WITHOUT PREJUDICE**.

**I. BACKGROUND**

Plaintiff Ali Salkhi is trustee of the Ali Salkhi and Fatemeh Salkhi 1993 Revocable Family Trust (the "Trust") and shareholder of plaintiff Salkhi Family Holdings ("SFH"). (First Amended

Complaint ("FAC"), ¶¶ 5–6.) The Trust owns three service stations located in the City of Petaluma, specifically, at 101 N. McDowell, 483 E. Washington Street, and 532 E. Washington Street. (*Id.* ¶ 10.) SFH manages the stations under a lease with the Trust and currently operates the stations' underground storage tanks ("USTs"). (*Id.* ¶ 14.) Nonparty Santa Rosa Grand Petroleum, Inc. ("Grand") previously operated the tanks from 2009 until March 2016 when SFH took over management of the stations. (*Id.*)

The FAC names as defendants Paula Dueweke in her individual capacity, Jessica Power in her official capacity, and the City of Petaluma as a municipal corporation. Dueweke is employed by the City's Fire Prevention Bureau. (*Id.* ¶ 8.) Power is the City's fire marshal and serves as the chief executive officer for the City's Fire Prevention Bureau. The California Environmental Protection Agency certified the Fire Prevention Bureau as the Certified Unified Public Agency ("CUPA") for the City of Petaluma. (*Id.*) The CUPA is responsible for regulating USTs located in the City. (*Id.*)

Plaintiffs allege that defendants sought "to make it much more difficult, and more expensive for the Salkhi Family to own and operate gas stations in the City of Petaluma" and therefore "intentionally treated them differently than other similarly situated property and/or business owners, without a rational basis." (*Id.* ¶ 9.) The unlawful conduct allegedly began at a meeting in January 2014 when nonparty Cary Fergus, the City's former fire marshal, noted Salkhi's purchase of one of the service stations and made the following remark: "Wow, I'm just a fire chief, and you people have now taken over the City of Petaluma and have a monopoly." (*Id.* ¶ 17.) Fergus's comment purportedly established a "policy of imposing illegal fines and foisting unnecessary and unwarranted expenses upon the Salkhi Family" comprised of a "series of acts." (*Id.* ¶ 16.)

First, Fergus caused plaintiffs to incur the expense of replacing fuel lines at the 532 E. Washington Street station in February 2014. At the insistence of Fergus during the January 2014 meeting, Salkhi hired a third-party inspector to check the station's fuel monitoring system. (*Id.* ¶ 18.) The inspector also examined the station's fuel lines which led to Fergus handing Salkhi "a typed report" directing the station to replace all of its fuel lines. (*Id.* ¶ 20.) Salkhi "suspected that

2

this typed report had been prepared before the inspection even started" because the monitoring system had not generated any alarms about the fuel lines and "no explanation" was otherwise given for why the fuel lines needed replacing. (*Id.*) "[I]nstead of fighting the City at that time . . . , the decision was made to replace the fuel lines," which cost approximately $100,000. (*Id.* ¶ 21.) Plaintiffs further allege that the City delayed inspecting the property after the work was completed, resulting in loss of rental income to the Trust. (*Id.* ¶¶ 21–22.)

Second, in March 2016, SFH took over from Grand management of the stations and operation of the USTs. (*Id.* ¶ 23.) Notwithstanding, the CUPA continued to issue UST permits to Grand rather than SFH. (*Id.* ¶¶ 24–27.)

Third, between December 2017 and November 2019, the City imposed "excessive fines" for false burglary alarms activated at two of the service stations. Section 6.40.140 of the Petaluma City Code provides that "[t]he police will respond to the first six [6] false alarms with no consequences under this chapter" and that "[a] police response to the seventh through twelfth false alarm in any twelve-month period will result in a $50 charge to the alarm user for each response." (*Id.* ¶ 29.) However, the City assessed fines of $90 on the third false alarm, $180 on the fourth false alarm, and $326 for each additional false alarm. (*Id.* ¶ 30.) Salkhi wrote to the City Attorney, "assert[ing] that City Code section 6.40.140 superseded any resolution approving a conflicting fee schedule." (*Id.* ¶ 31.) Despite "enclose[ing] a check for $300 payable to the City, which equaled the correct amount due," the City refused to cash the check and continued to issue invoices calculated under a conflicting fee schedule. (*Id.* ¶¶ 31–32.)

Lastly, in October and November 2019, Dueweke assessed "illegal citations" based on a misapplication of UST regulations. Section 2638(a) of Title 23 of the California Code Regulations provides:

> All monitoring equipment used to satisfy the requirements of this article shall be install, calibrated, operated and maintained in accordance with manufacturer's instructions, and <u>certified every 12 months</u> for operability, proper operating condition, and proper calibration. . . .

23 Cal. Code. Regs. § 2638 (emphasis added). Because the monitoring equipment for the USTs at the two Washington Street service stations were certified on November 20, 2018, plaintiffs allege

3

that no further certification was required before November 20, 2019. (FAC ¶ 37.) However, on October 8, Dueweke issued a pre-citation notice to SFH, indicating that certification for the monitoring equipment of the USTs located at 532 E. Washington Street was overdue. (*Id.* ¶ 38.) The pre-citation notice purported to rely on guidance from the California Water Board, though no copy of such guidance was provided. (*Id.*) SFH was directed to certify the station's monitoring equipment by October 24. (*Id.*) When it failed to do so, Dueweke cited SFH for violating Section 2638(a) and assessed a fine totaling $10,250. (*Id.* ¶ 39.) Dueweke imposed a similar citation and fine for the USTs located at 483 E. Washington Street. (*Id.* ¶ 41.)

After the original complaint was filed in August 2020, defendants (then only Dueweke and Power) moved to dismiss or, alternatively, to stay the action in light of a state regulatory proceeding brought by the County of Sonoma against the Salkhi family. The Court denied the motion to stay and granted in part and denied in part the motion to dismiss without prejudice to plaintiffs amending the complaint.

The amended complaint asserts that defendants Dueweke and the City violated plaintiffs' rights to substantive due process (Count 1), equal protection (Count 2), and procedural due process (Count 3) by engaging in the unlawful conduct alleged above. Count 4 seeks an order enjoining Power, in her official capacity as the chief executive officer of the CUPA, from interpreting Section 2638(a) to require certifications more frequently than once every 12 months. Count 5 seeks judicial declarations that USTs were required to be certified only once every 12 month; that the CUPA may not rely upon unspecified guidance from the California Water Board in deciding whether to issue operating permits; and that the City may not impose fines for false burglary alarms in excess of the amounts specified by the City Code.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir.2003). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Dismissal under Rule 12(b)(6) may be

4

based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.2001).

**III. ANALYSIS**

Defendants move to dismiss the amended complaint on the following grounds: (A) plaintiff Ali Salkhi still lacks standing in his individual capacity to assert the claims in this action; (B) the pleadings contain conclusory and time-barred allegations; (C) the individual defendants are entitled to qualified immunity; and (D) the City cannot be held vicariously liable for the actions of its employees. The Court addresses each ground in turn.

**A. STANDING**

Defendants first contend that plaintiff Ali Salkhi still lacks standing in his individual capacity, arguing that "[n]one of the[ ] claims implicate Salkhi's rights as an individual." (Mtn. at 10.) Plaintiffs respond that in addition to seeking relief for harm to the Trust, Salkhi also seeks to recover nominal damages and declaratory and injunctive relief.

The Court notes that the parties do not dispute that Salkhi has standing in his representative capacity as trustee of the family trust. However, the Court agrees with defendants that Salkhi does not have standing **in his individual capacity** to assert claims based on the acts alleged. Each of the allegedly unlawful actions were directed **toward the stations** and thus SFH and/or the Trust suffered the alleged harm: (1) the expense of replacing fuel lines at the 532 E. Washington Street station and the resulting delay in reopening; (2) the issuance of UST operating permits to the prior operator despite a change in management of the stations; (3) the assessment of fines for false burglary alarms activated at two of the stations; and (4) the imposition of penalties based on a misapplication of UST regulations.

Only in the opposition papers do plaintiffs contend that Salkhi is entitled to at least nominal damages. However, plaintiffs do not explain why.[1] Nor can the Court gather from the

---

[1] Plaintiffs filed a supplemental statement bringing the Court's attention to the recent decision in *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), in which the Supreme Court held that a request for nominal damages satisfies the redressability element for Article III standing where a plaintiff's claim is based on a completed violation of a legal right. 141 S. Ct. 792. However, the question here is not whether Salkhi is permitted to seek nominal damages for past

5

pleadings how Salkhi himself was personally harmed independent of the injury to SFH and/or the Trust. Accordingly, for the reasons stated in its previous order, Salkhi lacks standing in his individual capacity. The motion to dismiss is thus **GRANTED** in this regard.

### B. PLEADING DEFICIENCIES

Defendants next move for dismissal on the ground that the amended complaint is based on "improper, conclusory, and time-barred allegations[.]" (Mtn. at 13.) Defendants identify four specific pleading deficiencies, namely the lack of allegations (1) describing the motivation for defendants' alleged actions; (2) demonstrating that plaintiffs have been treated differently than other UST owners/operators; (3) sufficiently explaining the claim for excessive fines for the false alarms; and (4) explaining the harm plaintiffs suffered as a result of the City issuing permits to the prior operator despite the change in management. Defendants also contend that (5) some of plaintiffs' claims are time-barred. The Court discusses each below.

#### 1. INSUFFICIENT ALLEGATION OF DEFENDANTS' MOTIVATION

Defendants argue that "[p]laintiffs still do not provide any allegations concerning the motivation for [d]efendants' alleged actions." (Mtn. at 13.) Given the focus on a lack of government justification, the Court understands defendants to be challenging the substantive due process claims under Count 1. To state such a claim, plaintiffs must allege (1) the government's action was "arbitrary, irrational, or lacking any reasonable justification in the service of a legitimate interest"; and (2) the government's actions deprived them of a protected property interest. *See Colony Cove Properties, LLC v. City of Carson*, 640 F.3d 948, 962 (9th Cir. 2011); *see also Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (plaintiffs must allege both a deprivation of his life, liberty or property plus conscience shocking behavior by government).

At first blush, the allegations underlying the substantive due process claims appear

---

violations of his constitutional rights. The question is whether Salkhi alleged a constitutional injury in the first place, which the Court finds that he has not. Thus, *Uzuegbunam* does not help to establish Salkhi's standing. The plaintiffs in that case suffered harm *personal to them* when their own First Amendment rights had been infringed. Because the amended complaint does not allege that Salkhi was *personally* deprived of substantive or procedural due process or equal protection, he lacks standing *in his individual capacity* to assert the claims brought in this case.

6

conclusory. Count 1 alleges only that "[d]efendants arbitrarily, capriciously, irrationally, and yet deliberately" undertook their actions, *i.e.*, Dueweke ordering UST certifications more frequently than required by regulation and denying UST operating permits on this mistaken basis. (FAC ¶ 51.)[2] The Ninth Circuit has explained that "[w]hen executive action like a discrete permitting decision is at issue, only 'egregious official conduct can be said to be arbitrary in the constitutional sense'; it must amount to an 'abuse of power' lacking any 'reasonable justification in the service of a legitimate governmental objective.'" *Shanks v. Dressel*, 540 F.3d 1082, 1088 (9th Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "Official decisions that rest on an erroneous legal interpretation are not necessarily arbitrary." *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S 115, 128–30 (1992); *Brittain*, 451 F.3d at 996).

In *Shanks*, the Ninth Circuit determined that "[t]he conduct [plaintiff] alleges—a routine, even if perhaps unwise or legally erroneous, executive decision to grant a third-party a building permit—falls short of being constitutionally arbitrary. There is no suggestion, for instance, of a sudden change in course, malice, bias, pretext or, indeed, anything more than a lack of due care on Spokane's part." *Shanks*, 540 F.3d at 1089. Here, on the other hand, the allegations against Dueweke, while inartfully pled, collectively suggest that she acted improperly for reasons unrelated to the merits of the UST citations. *Cf. Merrill v. County of Madera*, No. 05-CV-195 (AWI), 2013 WL 1326542, at *6 (E.D. Cal. Mar. 29, 2013) (holding that county's delay in issuing permits and citation for ordinance violations was not constitutionally arbitrary). Indeed, the lack of justification itself only goes to support a finding that Dueweke acted arbitrarily or irrationally. Accordingly, defendants' protests about the absence of an alleged motivation do not persuade. The motion to dismiss is **DENIED** as to Count 1.

### 2. INSUFFICIENT ALLEGATION OF COMPARATORS

Next, defendants complain that plaintiffs fail to "allege specific facts suggesting they have been treated any differently than other UST owner-operators in the City." (Mtn. at 14.) The Court agrees, taking defendants to be challenging the equal protection claims under Count 2. To state an

---

[2] For the reasons discussed in Section III.B.3, the Court disregards the substantive due process claim regarding excessive fines for false burglary alarms.

7

equal protection claim as a "class of one," as they seek to do here, plaintiffs must allege that (1) they were intentionally treated differently from others similarly situated; and (2) there was no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Engquist v. Or. Dep't of Agriculture*, 478 F.3d 985, 995 (9th Cir. 2007) (in a "paradigmatic class-of-one case" a public official, "for some improper motive, comes down hard on a hapless private citizen") (internal citation omitted).

Here, plaintiffs fail to plead a class-of-one equal protection claim because the amended complaint provides no "allegations explaining to whom [plaintiffs were] similarly situated." *Mancini v. City of Cloverdale Police Dep't*, No. 15-CV-2804 (JSC), 2015 WL 4512274, at *5 (N.D. Cal. July 24, 2015); *see also 180 Land v. City of Las Vegas*, No. 18-CV-547 (CWH), 2018 WL 6729640, at 3 (D. Nev. Dec. 21, 2018) ("Here, the complaint does not provide any details regarding similarly situated landowners . . . ."), *affirmed on relevant grounds and vacated on other grounds by 180 Land Co. LLC v. City of Law Vegas*, 833 F. App'x 48, 50 (9th Cir. 2020). As the Ninth Circuit explained, "[w]hen conducting an equal protection analysis, we first identify the groups being compared. 'The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified . . . .'" *Taylor v. San Diego County*, 800 F.3d 1164, 1169 (9th Cir. 2015) (quoting *Arizona Dream Act Coal. V. Brewer*, 757 F.3d 1053, 1064 (9th Cir. 2014)). "[C]ursory allegations on being similarly situated are especially problematic where, *e.g.*, 'inherently subjective and individualized enforcement of health and safety regulations' are at issue." *Scocca v. Smith*, No. 11-CV-1318 (EMC), 2012 WL 2375203, at *5 (N.D. Cal. June 22, 2012) (quoting *Kansas Penn Gaming LLC v. Collins*, 656 F.3d 1210, 1220 (10th Cir. 2011)).

It is not enough for plaintiffs to allege upon information and belief that "defendants have treated them differently than other service station owners/operators with service stations located in the City of Petaluma[.]" (FAC ¶ 64.) Without more, plaintiffs cannot plausibly allege that their service stations were treated differently in comparison. Accordingly, plaintiffs fail state an equal protection claim. The motion to dismiss is **GRANTED** as to Count 2 based on the state of the record. If other facts are discovered, plaintiffs can always petition the Court for leave to amend.

8

### 3. Excessive Fines

Defendants' remaining pleading-related contentions focus on the factual predicates underlying the counts rather any particular legal element. For example, defendants argue that the claim regarding excess false alarm fines is deficient because "[p]laintiffs do not even identify which of the [s]tations were affected by the excessive false alarms, the time period in which the false alarms occurred, how many false alarms occurred, how many false alarms to which the police responded or which [s]tation(s) had fees assessed against it/them." (Mtn. at 14–15.) This information, along with the conflicting fee schedule that plaintiffs vaguely allude to in the pleadings (FAC ¶ 31), would have assisted the Court in determining whether a constitutional violation may lie based on these facts. However, more fundamentally, plaintiffs do not claim that Dueweke was responsible for assessing the fire alarm fines, and, for the reasons stated in Section III.D, plaintiffs fail to state a claim against the City under *Monell*. Thus, plaintiffs fail to assign a viable defendant for the claim regarding excessive alarm fines. The motion to dismiss is **GRANTED** as to any such claim.

### 4. Erroneous Permit Issuance

Defendants also argue that the claim regarding the refusal to issue SFH a UST permit is inadequately pled because "[p]laintiffs appear to allege that the City incorrectly issued UST permits to Grand instead of SFH in 2016[.]" (Mtn. at 15.) Given that SFH has been allegedly operating the stations since March 2016, "it remains entirely unclear how the issuance of incorrect UST permits has in any way damaged [p]laintiffs, where the incorrect permits did not prevent SFH from operating the [s]tations." (*Id.*) The Court is similarly perplexed. Plaintiffs allege that SFH has been denied UST permits since March 2016, while also claiming that in 2019, Dueweke refused to renew SFH's annual permits based on a misapplication of UST regulations, suggesting that SFH had been receiving permits up until that point. (*Compare* FAC ¶ 27 *with id.* ¶ 41.) Aside from this inconsistency, plaintiffs also do not explain how this error in naming the previous operator amounts to a violation of equal protection or any other constitutional right. Accordingly, to the extent that any of the remaining counts is based on a failure to issue the permit to the correct recipient, they fail as a matter of law. The motion to dismiss is **GRANTED** as to any such claim.

### 5. TIME-BARRED ALLEGATIONS

Once again, defendants contend that many of plaintiffs' allegations are time-barred. As noted, the counts are predicated on some or all of the following: (1) Fergus requiring plaintiffs to replace fuel lines at the 532 E. Washington Street station and the resulting delay in reopening **in 2014**; (2) Dueweke issuing UST operating permits to the prior operator despite a change in management of the stations **in 2016**; (3) the City's assessment of fines for false burglary alarms activated at two of the stations **between late 2017 and 2019**; and (4) Dueweke's assessment of penalties based on her misapplication of UST regulations **in 2019**. Once again, plaintiffs rely on the continuing violation doctrine.

The Ninth Circuit has "recognized two applications of the continuing violations doctrine: first, to a series of related acts, one or more of which falls within the limitations period, and second, to the maintenance of a discriminatory system both before and during [the limitations] period." *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (citation omitted). The Ninth Circuit observed that "[e]xcept for a limited exception for hostile work environment claims—not at issue here—the serial acts branch is virtually non-existent." *Id.* at 748. The Court previously determined that the alleged constitutional violations were discrete acts and therefore could not be saved by the serial acts branch of the continuing violation doctrine. (Dkt. No. 27 at 14–16.) Thus, plaintiffs were barred from recovering for injuries that accrued more than two years before the August 27, 2020 filing date. *See Action Apartment Ass'n, Inc. v. Santa Monica Rent Board*, 509 F.3d 1020, 1026 (9th Cir. 2007) (two-year limitations period).

Plaintiffs now seek to bring their claims under the systemic branch of the doctrine. However, the Ninth Circuit has "consistently refused to apply the systemic branch to rescue individualized claims that are otherwise time-barred," while leaving open the possibility that a theory could extend the limitations period in class-wide claims. *Bird*, 935 F.3d at 748. Here, plaintiffs assert individualized claims. Moreover, plaintiffs cannot simply label the same set of underlying conduct as a pattern-or-practice. The "assertion that [a] series of discrete acts flows from a [City]-wide, or systemic, discriminatory practice will not succeed in establishing [defendants'] liability for acts occurring outside the limitations period." *Lyons v. England*, 307

10

F.3d 109, 1107 (9th Cir. 2002). Accordingly, the continuing violation doctrine cannot rescue untimely claims for alleged violations predating August 27, 2018. *See*, *e.g.*, *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) (rejecting attempt to recast series of discriminatory acts as systemic violation). The motion to dismiss is therefore **GRANTED** as to the claim regarding the 2014 fuel line replacement.[3]

### C. QUALIFIED IMMUNITY

Defendants further seek dismissal on the basis of qualified immunity. Despite the caption naming Jessica Power as a defendant in her individual capacity, plaintiffs clarify in their opposition papers that Power is sued only in her official capacity. (Opp. at 4.) As Dueweke is the only individual defendant and the Court has dismissed the equal protection claims, the Court limits its qualified immunity analysis to the substantive and procedural due process claims against Dueweke.

In determining whether an officer is entitled to qualified immunity, the Court considers two questions: (1) whether the alleged misconduct violated a constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct. *See Hernandez v. City of San Jose,* 897 F.3d 1125, 1132 (9th Cir. 2018) (quoting *Maxwell v. County of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013)). A court has discretion to decide in which order to address the two qualified immunity inquiries. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the answer to either question is "no," then the officer is entitled to qualified immunity. *Id.*

In this case, the Court is only asked to consider the second step, that is, whether the rights at issue were clearly established. (Mtn. at 18 (assuming for purposes of argument that violations occurred).) Plaintiffs "bear[ ] the burden of showing that the rights allegedly violated were clearly established." *Shafer v. City of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal

---

[3] As to the claim regarding permits issuing to the prior operator, while the nature of the harm is unclear, to the extent that plaintiffs complain of injuries resulting from a lack of acknowledgment of the 2016 change in management, "continuing effect is insufficient to constitute a continuing violation." *Bird*, 935 F.3d at 748 (citing *Williams v. Owens-Illinois Inc.*, 665 F.2d 918, 924 (9th Cir. 1982)). Insufficient information is alleged to determine when the claim regarding the false alarm fines first accrued. Defendants do not dispute that the claims regarding Dueweke's 2019 citations are timely.

11

quotation marks and citation omitted). "Clearly established means that . . . the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citations omitted). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam).

With respect to the substantive due process claims, plaintiffs contend that they have a clearly established right to be free from arbitrary and irrational permit denials, relying on *Del Monte Dunes v. City of Monterey*, 920 F.2d 1496 (9th Cir. 1990), and *Bateson v. Geisse*, 857 F.2d 1300 (9th Cir. 1988). In *Del Monte*, a city council had approved a tentative map for the plaintiffs' development project, having met certain conditions. 920 F.2d at 1508. However, the council "abruptly changed course and rejected the plan, giving only broad conclusory reasons." *Id*. The Ninth Circuit reversed the district court's grant of an effective summary judgment, concluding that the government action in that case may be found to be arbitrary and irrational when it "was motivated, not by legitimate regulatory concerns, but by political pressure . . . ." *Id*. Likewise, in *Bateson*, the Ninth Circuit affirmed the district court's judgment following a bench trial that a city council's decision to deny a building permit violated the property owner's substantive due process rights, despite full compliance with the applicable requirements. 857 F.2d at 1303.

With respect to the procedural due process claim alleging that they were not afforded a hearing before being denied the UST permits, plaintiffs contend that they have a clearly established right to a pre-deprivation hearing in a non-emergency situation, relying on *Mathews v. Eldridge*, 424 U.S. 319 (1976). In *Mathews*, the plaintiff had been awarded disability benefits but was denied a right to hearing on the termination of those benefits. 424 U.S. at 332. Although it ultimately held that the available administrative procedures in that case complied with due process, the Supreme Court reaffirmed that "some form of hearing is required before an individual is finally deprived of a property interest." *Id.* at 333. While this "level of generality was not intended to satisfy the qualified immunity standard," *Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 983 (9th Cir. 1998) (citation omitted), the Court finds that

12

*Weinberg v. Whatcom County*, 241 F.3d 746 (9th Cir. 2001), presents a more analogous precedent. In *Weinberg*, the Ninth Circuit reversed denial of a land developer's motion for summary judgment, holding that a county violated the developer's "right to procedural due process as a matter of law by failing to provide a hearing prior to vacating his [approved] short plats." 241 F.3d at 754; *see also Harris v. County of Riverside*, 904 F.2d 497, 502–03 (9th Cir. 1990) (holding that property owner was entitled to notice and hearing before county deprived him of his property interest by "severely altering the permissible uses of [his] land").

With respect to the procedural due process claim alleging that Dueweke relied on unspecified guidance to issue the UST citations, plaintiffs contend that they have a clearly established right not to be subject to rules that are vague or unpublished, relying on *United States v. Locke*, 471 U.S. 84 (1985) and *City of Chicago v. Morales*, 527 U.S. 41 (1999). In *Locke*, the Supreme Court concluded that certain provisions of the Federal Land Policy and Management Act complied with due process. 471 U.S. at 108. The Court so held in light of the standard that "a legislature generally provides constitutionally adequate process simply by enacting the statute, publishing it, and, to the extent the statute regulates private conduct, affording those within the statute's reach a reasonable opportunity both to familiarize themselves with the general requirements imposed and to comply with those requirements." *Id.* (citations omitted). Conversely, in *Morales*, the Supreme Court held that a city's gang loitering ordinance was unconstitutionally vague in failing to provide fair notice of "what is forbidden and what is permitted." 527 U.S. at 60. The Court explained: "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits." *Id.* at 56.

The qualified immunity analysis "must be undertaken in light of the specific context of this case." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Thus, considering the aforementioned case law and taking the allegations as true, the Court finds that plaintiffs have clearly established rights (1) not to be arbitrarily or irrationally denied a permit in which they hold a protected interest; (2) to be afforded a pre-deprivation hearing if they hold a protected interest in the permit and no exigent circumstances exist; and (3) to fair notice that their activities were not in compliance with

13

applicable law. *See also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning."); *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2011) ("[W]e have held that such an entitlement to a government permit exists when a state law or regulation requires that the permit be issued once certain requirements are satisfied.") (citations omitted) (considering both procedural and substantive due process claims). Defendants attempt to distinguish plaintiffs' authorities by arguing that (1) Dueweke reasonably believed that plaintiffs failed to comply with UST regulations, and (2) plaintiffs were afforded, but waived, a pre-deprivation hearing.[4] However, these contentions do not persuade at this juncture because they necessarily rely on disputed facts outside of the pleadings and thus cannot be considered this early without some discovery.[5] Accordingly, the motion to dismiss on the basis of qualified immunity is **DENIED WITHOUT PREJUDICE**.

### D. *MONELL* LIABILITY

Lastly, defendants move to dismiss the City from this action, arguing that it cannot be held vicariously liable for the actions of its employees. Defendants also contend that plaintiffs have failed to allege the existence of an official policy or longstanding custom or practice to state a claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Plaintiffs respond that they are not alleging vicarious liability but rather seek to hold the City responsible for the actions of Cary Fergus as an official policymaker.

To state a claim for municipal liability under *Monell*, plaintiffs must allege that: (1) they were deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference of plaintiffs' constitutional

---

[4] Defendants only address the unpublished guidance claim by arguing that plaintiffs should have raised the issue at the pre-deprivation hearing which they failed to pursue.

[5] Defendants request judicial notice of certain pleadings and motions filed in the state proceeding brought by the County of Sonoma against the Salkhi family. As the allegations and arguments raised in the state proceeding are not pertinent to any of the issues raised in this motion, the request for judicial notice is **DENIED**.

14

rights; and (4) the policy, custom, or practice was the "moving force" behind the constitutional violation. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted). Municipal liability may be shown in one of three ways, "when an employee is acting pursuant to an expressly adopted official policy, longstanding practice or custom, or as a final policymaker." *Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). Plaintiffs rely on the third option. In this regard, "a local government may be held liable under [Section] 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 134–47 (9th Cir. 1994)), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016)).

Plaintiffs maintain that Cary Fergus "indisputably held final policymaking authority when he served as the City of Petaluma's Fire Marshall." (Opp. at 8.) However, they do not allege that he was the tortfeasor who committed the violations underlying the due process claims, *i.e.*, that he actually assessed the penalties for the false alarms or the UST infractions. Instead, plaintiffs claim that "Fergus established a policy of imposing excessive and illegal fines, as well as unnecessary and unwarranted expenses on the Salkhi Family." (*Id.*) Thus, plaintiffs must be asserting liability under *Monell* under a ratification theory.

To plead a *Monell* claim by ratification, plaintiffs must show that the "authorized policymakers approve[d] a subordinate's decision and the basis for it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "The policymaker must have knowledge of the constitutional violation and actually approve of it." *Id.* "A mere failure to overrule a subordinate's actions, without more, is insufficient to support a [Section] 1983 claim." *Id.* However, plaintiffs do not allege that Fergus knew, much less affirmatively approved, the conduct underlying the due process claims. Indeed, Fergus, who is not a party in this action, appears to have no longer been employed by the City at the time of those actions. (FAC ¶ 17 (identifying Fergus as former fire marshal).) Because plaintiffs fail to plead a *Monell* claim by ratification or any other theory, all counts against the City

are **DISMISSED**.[6]

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as follows: plaintiff Ali Salkhi is **DISMISSED** for lack of standing in his individual capacity only; count 2 is **DISMISSED** for failure to state a claim for violation of equal protection; and defendant City is **DISMISSED** for failure to state a *Monell* claim. To the extent that any of the remaining counts are premised on the fuel line replacement, the alarm fines, or the erroneous permit issuance, they are also **DISMISSED** for failure to state a claim. The motion to dismiss on the basis of qualified immunity is **DENIED WITHOUT PREJUDICE**.

Plaintiffs will be afforded one final opportunity to amend their pleadings, provided that they can do so in good faith. Within **ten (10) days** of this order, plaintiffs shall file a notice indicating whether they will amend. If so, plaintiffs must file an amended complaint within **twenty-one (21) days** from the date of this order. Defendants shall have **twenty-one (21) days** to respond. If an amended complaint is filed, to the extent that defendants move to dismiss, they shall not assert any grounds which could been asserted in the instant motion.

**IT IS SO ORDERED.**

This terminates Docket Number 36.

Dated: June 2, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[6] Plaintiffs do not respond to the contention about failing to allege a longstanding custom, focusing their response on liability based on the actions of an official policymaker. However, in doing so, plaintiffs appear to concede that they have not alleged deliberate indifference. (Opp. at 9 ("[D]eliberate indifference need not be alleged . . . .").) Should plaintiffs seek to reassert a *Monell* claim based on custom, they cannot do so without plausibly alleging deliberate indifference. *See Castro*, 833 F.3d at 1076 ("It is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury. A plaintiff must also demonstrate that the custom or policy was adhered to with 'deliberate indifference to the constitutional rights of [its] inhabitants.'") (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).